# EXHIBIT A

## Bid Procedures Order

**GARFUNKEL WILD, P.C.**
111 Great Neck Road
Great Neck, New York 11021
Telephone: (516) 393-2200
Telefax: (516) 466-5964
Burton S. Weston
Afsheen A. Shah

*Counsel for the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

SOUND SHORE MEDICAL CENTER
OF WESTCHESTER, *et al.*

       Debtors.
------------------------------------------------------------x

Chapter 11
Case No. 06-13050 (smb)

### ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' REAL ESTATE AND DESIGNATED PERSONAL PROPERTY ASSETS, (B) SCHEDULING AN AUCTION AND A SALE HEARING RELATED THERETO, (C) APPROVING THE FORM OF NOTICE OF THE AUCTION AND SALE HEARING, AND (D) APPROVING A BREAK-UP FEE AND EXPENSE REIMBURSEMENT

Upon that portion (the "**Bidding Procedures Motion**") of the motion (the "**Motion**"[1]), dated May 28, 2013, of Sound Shore Medical Center of Westchester ("**SSMC**"), and certain of its debtor affiliates, as debtors and debtors-in-possession (each a "**Debtor**" and collectively the "**Debtors**")[2], for entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (i) approving the proposed

---

[1] Capitalized terms used herein, unless herein defined, shall be used with the meanings ascribed to such terms in the Motion.

[2] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number include: Sound Shore Health System, Inc. (1398), Sound Shore Medical Center of Westchester (0117), The Mount Vernon Hospital, Inc. (0115), Howe Avenue Nursing Home d/b/a Helen and Michael Schaffer Extended Care Center (0781), NRHMC Services Corporation (9137), The M.V.H. Corporation (1514) and New Rochelle Sound Shore Housing, LLC (0117). There are certain additional affiliates of the Debtors who are not debtors and have not sought relief under Chapter 11.

Bidding Procedures in the form of Schedule 1 hereto to be used in connection with the proposed Sale of substantially all of the Acquired Assets of the Debtors to Montefiore SS Operations, Inc., Montefiore MV Operations, Inc., Montefiore HA Operations, Inc, and Montefiore SS Holdings, LLC, Montefiore MV Holdings, LLC, and Montefiore HA Holdings, LLC, as Buyers (collectively referred to as "**MMC**" or "**Buyer**"), or to any competing bidder or bidders (the "**Successful Bidder(s)**") that submits or collectively submit a higher or better offer or offers for the Acquired Assets, (ii) scheduling an auction (the "**Auction**") and a hearing to approve the Sale (the "**Sale Hearing**"); (iii) approving the form and manner of the Notice of the Auction and Sale Hearing (the "**Sale Notice**") substantially in the form attached as Schedule 2 hereto; and (d) approving the payment of the Break-Up Fee and Expense Reimbursement and certain overbid procedures; and this Court having held a hearing on the Bidding Procedures Motion on May _____, 2013 (the "**Bidding Procedures Hearing**"); and, based on the Bidding Procedures Motion and the record of the Bidding Procedures Hearing, it now appearing that the relief requested in the Bidding Procedures Motion is in the best interest of the Debtors' estates; and after due deliberation thereon and good cause appearing therefor, it is hereby:

## FOUND AND DETERMINED THAT:[3]

A.    This Court has jurisdiction over the Bidding Procedures Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the Bidding Procedures Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Good and sufficient notice of the relief sought in the Bidding Procedures Motion has been given and no further notice is required.  A reasonable opportunity to object or

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate.  See Fed. R. Bankr. P. 7052.

be heard regarding the relief requested in the Bidding Procedures Motion has been afforded to interested persons and entities, including: (a) the Office of the United States Trustee; (b) the Debtors' material prepetition and postpetition secured lenders or any agent therefor; (c) the holders of the 30 largest largest unsecured claims on a consolidated basis or, upon its appointment, counsel to the official committee of unsecured creditors (the "**Creditors' Committee**"); (d) the following state and local taxing and regulatory authorities: (i) the Centers for Medicare and Medicaid Services, (ii) the New York State Department of Health ("**DOH**"), (iii) the United States Attorney for the Southern District of New York, (iv) the Attorney General of the State of New York; (v) the Westchester County Attorney; (vi) the New Rochelle City Attorney, (vii) the Internal Revenue Service; (viii) the New York State Department of Taxation and Finance; (e) counsel to the Buyer; (f) counsel for the Department of Justice, (g) the United States Department of Health and Human Services, (h) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (i) all counter-parties to the Assigned Contracts; (j) all parties who are known to assert a Lien on the Acquired Assets; (k) all counter-parties to the Assigned Contracts; and (l) all parties identified by the Debtors as potentially having an interest in acquiring some or all of the Acquired Assets ("**Notice Parties**"); and a copy of the Sale Notice to all creditors of the Debtors who are listed on the Schedules filed by the Debtors or who have filed proofs of claim against the Debtors' estates ("**Scheduled and Filed Creditors**").

     C.    The proposed Sale Notice (including, without limitation, the sale of the Assets and the assumption and assignment of the Assigned Contracts and Cure Amounts and the Bidding Procedures, as set forth in the Bidding Procedures Motion and the Purchase Agreement, is good, appropriate, adequate, and sufficient, and is reasonably calculated to provide all interested parties, including the Notice Parties, and all Scheduled and Filed Creditors, with

timely and proper notice of the Sale and the Bidding Procedures, and no other or further notice of

the Sale, the assumption and assignment of the Assigned Contracts and Cure Amounts, or the

Bidding Procedures, as set forth herein and in the Bidding Procedures Motion, is required.

D.    The Debtor has articulated good and sufficient reasons for this Court to

grant the relief requested in the Bidding Procedures Motion, including this Court's (i) approval

of the Bidding Procedures, attached hereto as Schedule 1, (ii) approval of payment of the Break-

Up Fee and Expense Reimbursement (as described below) from the proceeds of any Alternate

Transaction, (iii) determination of final Cure Amounts in the manner described herein, and (iv)

approval of the form and manner of service of the Sale Notice attached hereto as Schedule 2.

E.    The Debtors have articulated good and sufficient reasons for, and the best

interests of the Debtors' estates will be served by, this Court scheduling a subsequent Sale

Hearing to consider whether to grant the remainder of the relief requested in the Motion,

including approval of the proposed Sale in accordance with either (i) the Purchase Agreement

between the Debtor and the Buyer attached as Exhibit C to the Motion, or (ii) such other

agreement or agreements by and between the Debtor and the Successful Bidder or Successful

Bidders, free and clear of, among other things, all liens, claims, encumbrances, and interests

(collectively, "**Liens**") (other than the Permitted Liens) with the same to attach to the proceeds

thereof pursuant to section 363 of the Bankruptcy Code.

F.    The Break-Up Fee and Expense Reimbursement, to the extent payable, to

be paid under the circumstances set forth in the Purchase Agreement as modified by this Order,

each is (i) an actual and necessary cost and expense of preserving the Debtors' estates within the

meaning of section 503(b) of the Bankruptcy Code, (ii) commensurate to the real and substantial

benefit conferred upon the Debtors' estates by Buyer, (iii) reasonable and appropriate in light of

4

the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by Buyer, and (iv) necessary to induce Buyer to continue to pursue the Sale and to continue to be bound by the Purchase Agreement.

G.    The Debtors' authorization to pay the Break-Up Fee and Expense Reimbursement is an essential inducement and condition relating to Buyer's entry into, and continuing obligations under, the Purchase Agreement. The Debtors' promise to pay the Break-Up Fee and Expense Reimbursement, which has induced Buyer to submit its bid that will serve as a minimum or floor bid on which the Debtors can rely, provides a material benefit to the Debtors' estates, and their creditors by increasing the likelihood that the best possible purchase price for the Assets will be received. Accordingly, the Bidding Procedures, the Break-Up Fee and Expense Reimbursement are reasonable and appropriate.

## NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    All objections to entry of this Order or to the relief provided herein and requested in the Bidding Procedures Motion that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled in their entirety.

### The Bidding Procedures

2.    The Bidding Procedures, as set forth on <u>Schedule 1</u> and incorporated herein by reference as if fully set forth herein, are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Assets. Notwithstanding the above, any party in interest may object at the Sale Hearing to the criteria used by the Debtors to select the highest or otherwise best offer for the Assets.

2504638v.6

3.    The deadline for submitting bids for the Assets (the "**Bid Deadline**") shall

be _____, 2013, at 4:00 p.m.

4.    Except as may be limited by the Purchase Agreement, the Debtors are

authorized to extend the deadlines set forth in this Order and/or adjourn, continue or suspend the

Auction and/or the Sale Hearing for any reason.

5.    The Debtors are authorized to take any and all actions necessary or

appropriate to implement the Bidding Procedures.

## The Auction

6.    The Auction shall commence at 10:00 a.m. prevailing Eastern Time on

_____, 2013 at Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, or such

later time or other place as decided by the Debtors, and the Debtors shall notify all Qualified

Bidders of any such later time or place; provided, however, in the event that no Qualified Bids

(other than that submitted by Buyer) are received by the Bid Deadline or if the aggregate value

of the highest Qualified Bids that have been submitted for all or a portion of the Acquired Assets

does not exceed the Minimum Bid(s), the Debtors shall not be required to conduct an Auction,

and in such event the Debtors shall proceed with the approval of the Purchase Agreement.

## Break-Up Fee and Expense Reimbursement

7.    The Debtors are authorized to pay the Break-Up Fee and Expense

Reimbursement, to the extent incurred and solely in the event of the consummation of an

Alternate Transaction from the first proceeds of such transaction, without further order of the

Court.

8.    The terms of the Purchase Agreement shall govern (i) the conditions under

which the bid of Buyer is terminable (which are terms and conditions for termination of the

6

Purchase Agreement), (ii) Buyer's entitlement to payment of the Deposit, and (iii) the Break-Up

Fee and Expense Reimbursement.

### Sale Hearing

9.      The  Sale  Hearing  shall  be  held  before  the  Honorable

_____, United States Bankruptcy Judge, on, 2013 at 10:00 a.m. at the United

States Bankruptcy Court, _____, at which time

this Court shall consider (i) approval of the Sale to MMC other Successful Bidder(s); (ii) the

proposed assumption and assignment of the Assigned Contracts and related Cure Amounts in

connection with the Sale; (iii) the entry of the proposed sale order, substantially in the form

attached to the Motion as Exhibit B (the "**Sale Order**"); (iv) any issues or objections that are

timely interposed by any parties; and (v) such other or further relief as this Court may deem just

or proper.

10.     Except as may be limited by the Purchase Agreement, the Sale Hearing

may be adjourned by the Debtors, after consultation with the Committee, without further order of

this Court, by filing a notice with this Court and serving such notice on all Qualified Bidders.

### Notice

11.     The Notice of Auction and Sale Hearing substantially in the form attached

hereto as Schedule 2 hereto is hereby approved.

12.     By no later than _____, 2013, the Debtors shall cause a copy of

the Bidding Procedures, the Sale Notice and this Order to be served upon the Notice Parties and

the Scheduled and Filed Creditors via first class mail.

13.     As soon as practicable after entry of this Order, the Debtors shall submit

the Notice of Auction and Sale Hearing for publication once in The New York Times (Local

Edition) pursuant to Bankruptcy Rule 2002(l).

7

14.     The notice as set forth in the preceding paragraphs shall constitute good and sufficient notice of the Motion, the Auction, the Sale Hearing and the proposed Sale Order, and no other or further notice of the Motion, the Auction, the Sale Hearing and/or the proposed Sale Order shall be necessary or required.

## Objections to Motion

15.     Objections, if any, to the Sale Motion must be made in writing, must state with particularity the reasons for the objection or response, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the nature and basis of the objection and the specific grounds therefore, and must be filed with the Clerk of the Bankruptcy Court (with a copy to be delivered to the Chambers of the Honorable _____, United States Bankruptcy Judge, _____,) and shall be served so as to be **received** no later than 4:00 p.m. prevailing Eastern Time on _____, 2013 (the "**Objection Deadline**"), upon: (a) the Office of the United States Trustee, 33 Whitehall Street, New York, New York 10004, Attn: _____, Esq.; (b) counsel for the Debtors, Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, New York 11021, Attn: Burton S. Weston, Esq. and Afsheen Shah, Esq.; (c) counsel for the Creditors' Committee, _____; (d) counsel for the Buyer, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119, Attention: Frank A. Oswald, Esq.; and (e) counsel to the DIP Lender, _____.

## Assigned Contracts

16.     The Debtors shall file a copy of the Schedule of Assigned Contracts (the "**Assumption Schedule**") with the Court no later than fifteen (15) days prior to the Objection

Deadline and shall concurrently serve notice of such schedule upon all counterparties to the Assigned Contracts and the Notice Parties.

17.     The Assumption Schedule shall identify the proposed Assigned Contracts and the corresponding Cure Amounts required by section 365 of the Bankruptcy Code, if any. The Debtors, with the consent of Buyer or the Successful Bidder(s), as applicable, shall have the right to amend the Assumption Schedule before the tenth (10th) business day prior to the closing of the Sale to remove contracts or leases therefrom.  All non-Debtor parties to the Assigned Contracts shall have until the Objection Deadline to file an objection (an "**Assumption Objection**") to the assumption and assignment of the Assigned Contracts listed on the Assumption Schedule to which they are parties, or to the Cure Amounts listed for those Assigned Contracts.  Any party filing an Assumption Objection shall state with specificity the basis of the objection and what Cure Amount it asserts, and shall include appropriate documentation in support thereof.

18.     The Debtors, with the consent of MMC or the Successful Bidder(s), as applicable, shall have the right to amend the Assumption Schedule at any time prior to ten (10) business days before the closing of the Sale to add additional Assigned Contracts thereto.  The Debtors shall file and serve notice of any such amendment (an "**Amendment Notice**") on all non-Debtor parties to the Assigned Contracts added to the Assumption Schedule by that amendment.  All non-Debtor parties to the Assigned Contracts added to the Assumption Schedule pursuant to this paragraph shall have until fifteen (15) days after the date of service of the applicable Amendment Notice to file an Assumption Objection.

19.     If an Assumption Objection is timely filed and not consensually resolved, this Court may hold a hearing with respect to such Assumption Objection either at the Sale

2504638v.6

Hearing or at such other date as this Court shall designate. If the Assumption Objection relates only to the Cure Amount of an Assigned Contract, that Assigned Contract may be assumed by the Debtors and assigned to Buyer or the Successful Bidder(s), as applicable, provided, however, that the amount asserted by the objecting party as the proper Cure Amount, or a different amount set by this Court, shall be held in escrow pending further order of this Court or mutual agreement of the parties as to the proper Cure Amount for that Assigned Contract. The Debtors and Buyer or the Successful Bidder(s), as the case may be, are hereby authorized to settle, compromise, or otherwise resolve any disputed Cure Amounts with the relevant non-Debtor party to any Assigned Contract without Court approval or notice to any party.

20.    If no Assumption Objection is timely filed and served, and subject to entry of an Order by this Court at the Sale Hearing approving the Sale and proposed assumption and assignment of the Assigned Contracts in connection therewith, the Cure Amounts set forth in the Assumption Schedule, as amended, shall be controlling notwithstanding anything to the contrary in such Assigned Contracts, and the non-Debtor parties to the Assigned Contracts shall be barred from asserting against the Debtors or Buyer (or the Successful Bidder(s)) any other claim arising from the applicable Assigned Contracts.

21.    The effective date of any assumption and assignment of any Assigned Contract shall be the date on which the Sale closes. Any Cure Amounts to be paid under any Assigned Contract shall be paid by Buyer (or Successful Bidder(s), as applicable) either prior to, upon, or promptly following the closing of the Sale or as otherwise agreed to by the parties to the Assigned Contract.

### **Additional Provisions**

10

22.    The Debtors are authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the requirements established by this Order.

23.    Nothing contained in this Order precludes any party in interest from objecting to the Sale in accordance with the objections procedures set forth herein and no party shall be deemed to have consented to the Sale by virtue of not having objected to the Bidding Procedures Motion.

24.    The Debtors are hereby authorized to implement the Bidding Procedures and conduct the Auction without the necessity of complying with any state or local bulk transfers law or requirement or any similar law of any state or other jurisdiction which applies in any way to any of the transactions under the Purchase Agreement.

25.    This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order, including jurisdiction to allocate the consideration paid for some or all of the Assets to each individual asset, as necessary, to determine the proceeds to which a Lien attached.

26.    Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable immediately upon entry hereof.

Dated: _____, 2013
        White Plains, New York

                                    _____
                                    HONORABLE ROBERT D. DRAIN
                                    UNITED STATES BANKRUPTCY JUDGE

11

2504638v.6

## **Schedule 1**

## **Bidding Procedures**

2504638v.5

# BIDDING PROCEDURES
## AND TERMS AND CONDITIONS OF SALE

Sound Shore Medical Center ("SSMC") and certain of its debtor affiliates (each a "Debtor" and collectively, the "Debtors") has entered into an asset purchase agreement (the "Purchase Agreement") with Montefiore SS Operations, Inc., Montefiore MV Operations, Inc., Montefiore HA Operations, Inc, and Montefiore SS Holdings, LLC, Montefiore MV Holdings, LLC, and Montefiore HA Holdings, LLC (collectively, "MMC" or "Buyer"), dated as of May ___, 2013, for the sale of all of the Debtors' Owned Real Property and certain designated personal property, including Furniture, Fixtures, Inventory, Assigned Contracts and related operating Acquired Assets (collectively, the "Acquired Assets"). The Debtors are currently soliciting other higher or better bids for the sale of the Acquired Assets (the "Sale").[1]

### A.    **Bidding Procedures**

Set forth below are the bidding procedures (the "Bidding Procedures") with respect to the Sale by the Debtors of the Acquired Assets. On May ___, 2013, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order") granting the Debtors' motion (the "Procedures Motion") insofar as it sought the approval of the Bidding Procedures to be employed in connection with the solicitation of higher or better bids and an auction (the "Auction") for the Sale of the Assets.

### B.    **Relevant Dates**

| | |
|---|---|
| Bid Deadline: | June ___, 2013 (4:00 p.m. prevailing Eastern Time) |
| Auction: | June ___, 2013 (10:00 a.m. prevailing Eastern Time) |
| Objection Deadline: | June ___, 2013 (4:00 p.m. prevailing Eastern Time) |
| Sale Hearing: | July ___, 2013 (10:00 a.m. prevailing Eastern Time) |

### C.    **Acquired Assets to be Sold Free and Clear**

The Debtors are offering for Sale the Acquired Assets, as defined in the Purchase Agreement. Except as otherwise provided in the Purchase Agreement with respect to the Sale, all of the Seller's right, title and interest in and to the Acquired Assets shall be sold free and clear of all liens, claims and encumbrances, security interests and other restrictions on transfer (collectively, the "Liens") to the extent permitted by section 363 of the Bankruptcy Code and other applicable law (except as otherwise expressly provided in the Purchase Agreement) with such Liens to attach to the proceeds of the Sale.

Except as expressly provided in the Purchase Agreement, the Sale of the Acquired Assets shall be on an **"as is, where is"** basis and without representations or warranties of any kind, nature or description by the Debtors or its agents.

---

[1] Capitalized terms, unless herein defined, shall have the meaning ascribed to them in the Purchase Agreement.

D.    **Stalking Horse Bidders**

The Agreement provides that the Buyer shall act as the "stalking horse bidder" in the Auction for the Acquired Assets with the right to receive a break up fee of $_____ (the "Break Up Fee") and an expense reimbursement in an amount equal to the reasonable and documented professional fees of Buyer, not to exceed the aggregate of $_____ (the "Expense Reimbursement"), solely in the event of the consummation of a Sale of the Acquired Assets to an entity other than Buyer making the "highest or otherwise best" offer therefor. The Break Up Fee and Expense Reimbursement shall be paid from the first proceeds of an Alternate Transaction, including the Sale, in accordance with the term of the Purchase Agreement.

THE DEBTORS RESERVE THE RIGHT, IN THEIR DISCRETION, TO DETERMINE WHETHER ANY BID IS BETTER, IF NOT HIGHER, THAN ANOTHER BID SUBMITTED DURING THE AUCTION. THE DEBTORS MAY CONSIDER A VARIETY OF FACTORS IN MAKING THIS DECISION, INCLUDING WITHOUT LIMITATION, ANY PROPOSED CONDITIONS TO CLOSING, TIMING OF CLOSING OF THE PROPOSED TRANSACTION, AND THE LIKELIHOOD OF THE BIDDER TO OBTAIN REQUISITE APPROVALS.

E.    **Mailing the Auction and Hearing Notice**

The Debtors shall provide notice of the Auction and Sale of the Acquired Assets (the "Sale Notice") together with a copy of these Bidding Procedures by first class mail, postage prepaid, to: (a) the Office of the United States Trustee; (b) the Debtors' material prepetition and postpetition secured lenders or any agent therefor; (c) the holders of the 30 largest largest unsecured claims on a consolidated basis (or upon its appointment counsel to the official committee of unsecured creditors (the "Creditors' Committee"); (d) the following state and local taxing and regulatory authorities: (i) the Centers for Medicare and Medicaid Services, (ii) the New York State Department of Health ("DOH"), (iii) the United States Attorney for the Southern District of New York, (iv) the Attorney General of the State of New York; (v) the Westchester County Attorney; (vi) the New Rochelle City Attorney, (vii) the Internal Revenue Service; (viii) the New York State Department of Taxation and Finance; (e) counsel to the Buyer; (f) counsel for the Department of Justice, (h) the United States Department of Health and Human Services, (g) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (h) all counter-parties to the Assigned Contracts; (i) all parties who are known to assert a Lien on the Acquired Assets ("Notice Parties") and (j) all counter-parties to the Assigned Contracts; and (j) all parties identified by the Debtors as potentially having an interest in acquiring some or all of the Assets ; and a copy of the Sale Notice to all creditors of the Debtors who are listed on the Schedules filed by the Debtors or who have filed proofs of claim against the Debtors' estates ("Scheduled and Filed Creditors").

Any other party in interest that wishes to receive a copy of the Bidding Procedures Order and/or the Procedures Motion may make such request in writing to Burton Weston, Esq., Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, by telephone: (516) 393-2588, or via email at bweston@garfunkelwild.com.

2

F.    **Confidentiality Agreement / Due Diligence**

Any entity that wishes to conduct due diligence with respect to the Acquired Assets, other than Buyer, must (i) deliver to the Debtors an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors and on terms no less favorable than the agreement executed by the Buyer, and (ii) deliver to the Debtors a written non-binding expression of interest to purchase the Assets, reasonably acceptable to the Debtors.

Interested parties that comply with the foregoing (each such entity referred to as a "Potential Bidder"), shall be permitted to conduct diligence with respect to the Assets, provided however, that the Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below).

G.    **Qualification of Bids and Bidders**

In order to participate in the bidding process and to have a bid considered by the Debtors, each Potential Bidder must deliver a written, irrevocable offer , for some or all of the Debtors' Acquired Assets, satisfying the below criteria. **A BID MAY BE MADE FOR ALL OR ONLY A PORTION OF THE ASSETS.** A "Qualified Bidder" is a Potential Bidder that delivers a binding bid that in the Debtors' discretion, after consultation with the Creditors' Committee, satisfies the following (a "Qualified Bid"):

(a)    Bid Deadline. Each Bid Package (as defined below) must be delivered in written form to: (i) counsel to the Debtors, Burton Weston, Esq., and Afsheen Shah, Esq., Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY    11021,    (ii)    counsel    for    the    Creditors'    Committee, _____, Attn: _____., and (iii) counsel for the DIP Lender, _____, in each case so as to **actually be received no later than 4:00 p.m. (prevailing Eastern Time) on June ___, 2013 (the Bid Deadline)**.

(b)    Bid Package. Each bid must include (collectively, the "Bid Package"): (i) a written and signed irrevocable offer stating that (x) the bidder offers to consummate a sale transaction on terms and conditions no less favorable than in the Purchase Agreement and in an amount at least equal to the Minimum Bid (as defined below), (y) confirming that the bid will remain irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order (as defined below), and (ii) closing with the Successful Bidder and (z) that the Bidder has had the opportunity to conduct due diligence prior to its offer and does not require further due diligence, has relied solely upon its own independent review and investigation and did not rely on any written or oral representation except as expressly provided with Modified Purchase Agreement (as defined below); (ii) an executed copy of the Purchase Agreement as modified by the bidder in accordance with its bid (the "Modified Purchase Agreement"); and (iii) an electronic markup of the Agreement clearly showing the revisions in the Modified Purchase Agreement (formatted as a Microsoft Word document or such other word processing format acceptable to the Debtors) and the electronic markup of

3

the Purchase Agreement. The Debtors, in consultation with the Creditors' Committee and the DIP Lender, shall determine whether any Modified Purchase Agreement that modifies the Purchase Agreement in any respect beyond the identity of the purchaser and the purchase price under the Agreement is a Qualified Bid.

     (c)    <u>Minimum Bid</u>. The amount of the purchase price in such bid must provide for net cash (or cash equivalent) that is at least in the amount of: $100,000 more than the base price contained in the Purchase Agreement, plus the amount of the Break Up Fee and Expense Reimbursement (the "<u>Minimum Bid</u>"). [Any Minimum Bid must provide for the guaranty and/or repayment of any postpetition financing to the same extent repayment is agreed to by Buyer. Buyer has agreed to provide a letter of credit or cash collateral in an amount of $7 million to $10 million to collateralize the Debtors' Postpetition Term Loan Obligations and has agreed to grant a continuing lien in post-closing accounts receivable to guaranty any shortfall in the collection of Postpetition Revolving Loan Obligations in an amount not to exceed $5 million. Any Minimum Bid must provide for these terms.

     (d)    <u>Financial Information</u>. The Bid Package must contain such financial and other information that will allow the Debtors to make a determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement, including any proposed conditions to Closing and adequate assurance of such bidder's ability to perform under any Assigned Contracts and to pay all cure amounts required to assume and assign any such Assigned Contracts.

     (e)    <u>Additional Bid Protections</u>. The bid must not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment.

     (f)    <u>Identity of Bidders</u>. Each Potential Bidder must fully disclose the identity of each entity that will be bidding for the Acquired Assets, as well as disclose the organization, form and the business conducted by each entity and what, if any, connection the Potential Bidder has with the Debtors. Potential Bidders shall be required to provide such additional information as the Debtors may require regarding a bidder's ability to satisfy the requirements of the transaction contemplated by the Modified Purchase Agreement.

     (g)    <u>Due Diligence</u>. The bid must not contain any contingencies of any kind, including, among others, obtaining (i) financing; (ii) shareholder, board of directors or other approval; (iii) the outcome or completion of due diligence. Each Potential Bidder must also affirmatively acknowledge that the Potential Bidder (i) had an opportunity to conduct due diligence regarding the Acquired Assets prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, and (iii) did not rely

4

upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith except as expressly stated in these Bidding Procedures.

(h)    <u>Consents</u>. Each Potential Bidder must represent that it obtained all necessary organizational (not regulatory) approvals to make its competing bid and to enter into and perform the Modified Purchase Agreement.

(i)    <u>Deposit</u>. A Potential Bidder must deposit 10% of the initial purchase price set forth in Modified Purchase Agreement, plus the amount of the Break Up Fee and Expense Reimbursement, with the Debtors in the form of a certified check or wire transfer on or before the Bid Deadline (the "<u>Deposit</u>"). The Potential Bidder or the Backup Bidder (defined below) shall forfeit the Deposit if (i) the Potential Bidder of the Backup Bidder is determined to be a Qualified Bidder and withdraws or modifies its bid other than as provided herein before the Bankruptcy Court approves the Debtors' selection of the Successful Bidder, or (ii) the bidder is a Successful Bidder (defined below) and (x) modifies or withdraws the bid without the Debtors' consent before the consummation of the sale contemplated by the bid, or (y) breaches any of the Modified Purchase Agreement. The Deposit shall be returned to the bidder (i) as soon as practicable if the bidder is not determined to be a Qualified Bidder or (ii) no later than five (5) business days after entry of the Sale Order if the bidder is a Qualified Bidder (who has not otherwise forfeited its Deposit), but is not the Successful Bidder or the Backup Bidder; provided, however, in the event Buyer is not the Successful Bidder, its Deposit shall be returned to it promptly upon termination of the Purchase Agreement, but in no event later than five (5) business days from such termination.    The Debtors will maintain any Deposit in a non-interest bearing Debtor account.

(j)    <u>As Is. Where Is</u>: Any Modified Purchase Agreement must provide that the Sale will be on an "as is, where is" basis and without representations or warranties of any kind except and solely to the extent expressly set forth in the Modified Purchase Agreement of the Successful Bidder. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its bid and that it has relied solely upon its own independent review and investigation in making its bid.

(k)    <u>Debtors' Considerations</u>: The Debtors, after consultation with the Creditor's Committee, will have the right to determine that a bid is not a Qualified Bid if either of the following conditions is satisfied: (A) the ability of the Potential Bidder to use the Acquired Assets is not consistent with the Debtors' mission; or (B) the terms of the bid are materially more burdensome or conditional than the terms of the Purchase Agreement and are not offset by a material increase in purchase price, which determination may take into consideration: (1) whether the bid requires any indemnification of such Qualified Bidder; (2) whether the bid

does not provide sufficient cash consideration to pay transfer taxes, cure costs or other cash costs of the transaction (including professionals' fees and the Breakup Fee); (3) whether the bid includes a non-cash instrument or similar consideration that is not freely marketable; or (4) any other factors the Debtors, after consultation with the Creditor's Committee, may deem relevant.

The Debtors are offering to sell the Acquired Assets. The Debtors, in consultation with the Creditors' Committee, shall have the exclusive right to determine whether a bid is a Qualified Bid and shall notify bidders whether their respective bid(s) have been determined to be a Qualified Bid(s) prior to the Auction. The Debtors may reject any bid that is on terms more burdensome or conditional than the Purchase Agreement or is otherwise contrary to the best interests of the Debtors' estates. In addition to the requirements above, the Debtors may request any additional information from any bidder to assist the Debtors in making a determination as to whether a bid is a Qualified Bid. For the avoidance of doubt, Buyer is a Qualified Bidder and the bid set forth in the Purchase Agreement is a Qualified Bid.

H.    **Sale to MMC**

If no Qualified Bid other than Buyer's is submitted by the Bid Deadline, the Debtors shall not hold the Auction, but may proceed with the Sale Hearing and seek approval of the Purchase Agreement and the transactions contemplated thereby.

I.    **Auction**

In the event that the Debtors timely receive at least one Qualified Bid (excluding Buyer's) by the Bid Deadline for all or any portion of the Assets, the Debtors shall conduct the Auction with respect to the Acquired Assets. The Auction will take place at the offices of counsel to the Debtors, Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021 on **June _____, 2013,** starting at **10:00 a.m.** (prevailing Eastern Time), or at such other later date and time or other place, as may be determined by the Debtors at or prior to the Auction. The Auction shall be governed by the following procedures:

(a)    Participation. Only the Qualified Bidders that have submitted a Qualified Bid and provided a Deposit(s) will be eligible to participate in the Auction, and each Qualified Bidder shall appear in person at the Auction (and any attorney for a Qualified Bidder may appear at the Auction at the discretion of the Qualified Bidder). In the event a Qualified Bidder does not attend the Auction, the relevant Qualified Bid shall nonetheless remain fully enforceable against that Qualified Bidder in accordance herewith. The Debtors, in consultation with the Creditors' Committee, will evaluate all Qualified Bids received and will select the Qualified Bid that reflects the highest or best offer for all or any portion of the Assets, and otherwise complies with the bid requirements set forth herein, as the "Starting Auction Bid." The Debtors may consider a variety of factors to determine the Starting Auction Bid including changes to the Purchase Agreement and the Qualified Bidder's ability to consummate the Sale.

6

(b)     _Bidding._ Bidding at the Auction shall commence at the amount of the Starting Auction Bid. Qualified Bidders may then submit successive bids in increments of $100,000 (the "Bid Increment"); provided, however, that the Debtor, in consultation with the Creditors' Committee, shall retain the right to modify the Bid Increment at the Auction. Any bid submitted after the conclusion of the Auction shall not be considered for any purpose.

(c)     _Higher and Better._ The Debtors reserve the right, in consultation with the Creditors' Committee, to determine whether any bid is better, if not higher, than another bid submitted during the Auction. The Debtors may consider a variety of factors in making this decision, including without limitation, the ability of a Bidder to obtain the necessary regulatory approvals, whether the bid is materially more burdensome than the terms of the Modified Purchase Agreement, any proposed conditions to closing, whether the bid includes any non-cash components and provides significant cash consideration for the payment of required costs of the transaction, and any other factors deemed relevant.

(d)     _Successful Bid._ The Auction shall continue until there is only one collective offer or separate offers for separate Assets, that the Debtors, in consultation with the Creditors' Committee, determines, subject to Court approval, is (or are) the highest or otherwise best offer(s) from among the Qualified Bids submitted at the Auction (the "Successful Bid(s)"). The bidder submitting such Successful Bid shall become the "Successful Bidder(s)," and shall have such rights and responsibilities of the purchaser, as set forth in the Modified Purchase Agreement, or the Purchase Agreement, as applicable. Within one business day after the conclusion of the Auction (but in any event prior to the commencement of the Sale Hearing), the Successful Bidder(s) shall (i) complete and execute all Purchase Agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid(s) was made, and (ii) supplement its Deposit by wire transfer or other immediately available funds so that, to the extent necessary, such Deposit equals 10% of the Successful Bid(s) plus the amount required for the payment of the Expense Reimbursement.

(e)     _Anti-Collusion._ At the commencement of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with any other bidder or potential bidder with respect to the bidding or the Sale.

(f)     _Conduct of Auction._ The Auction may be conducted openly with the proceeding being transcribed and each Qualified Bidder being informed of the terms of the previous bid; the Debtors or its counsel may meet privately with any Qualified Bidder to negotiate the terms of its bid. The Debtors, in consultation with the Creditors' Committee, may adopt other rules for the conduct of the Auction at the Auction which, in its judgment, will better promote the goals of the Auction.

7

(g)    Backup Bid.  At the conclusion of the Auction, the Debtors will also announce the second highest or otherwise best bid(s) from among the Qualified Bids submitted at the Auction (the "Backup Bid(s)").  The bidder(s) submitting such Backup Bid(s) shall become the "Backup Bidder(s)," and subject to the rights of the Successful Bidder, shall have such rights and responsibilities of the Buyer, as set forth in the Modified Purchase Agreement or the Purchase Agreement, as applicable.  The Backup Bid shall remain open and irrevocable until the earlier of (x) ninety (90) days following entry of the Sale Order and (y) Closing of the Sale.  The Backup Bidder's Deposit will be returned by the Debtors upon consummation of the Sale of the Acquired Assets to the Successful Bidder(s) or will be otherwise applied or forfeited as provided in Section G(i) above if the Backup Bidder is determined to be the Successful Bidder, except with respect to the Buyer.

(h)    Extensions/Adjournment.  The Debtors reserve their rights, in the exercise of its judgment, in consultation with the Creditors' Committee, to modify any non-material provisions of the Bidding Procedures at or prior to the Auction, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice consistent with the Purchase Agreement and Bid Procedures Order.

## J.    Sale Hearing and Return of Deposits

The Successful Bid and the Backup Bid will be subject to approval by entry of an order (the "Sale Order") by the Bankruptcy Court after a hearing (the "Sale Hearing") that will take place **July ____ 2013 at 10:00 a.m.** (prevailing Eastern Time).  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court.  Upon approval of the Backup Bid by the Bankruptcy Court, the Backup Bid shall remain open and irrevocable until the earlier of: (i) ninety (90) days following entry of the Sale Order, or (ii) the Closing of the Sale.

No offer shall be deemed accepted unless and until it is approved by the Bankruptcy Court.

Objections, if any, to the Sale Motion and any filed supplements thereto, shall: (i) be in writing; (ii) specify with particularity the basis of the objection; and (iii) be filed with the Court and simultaneously served on: (a) the Office of the United States Trustee, 33 Whitewall Street, New York, New York 10001, Attn: Susan Golden, Esq. and William E. Curtin, Esq.; (b) counsel for the Debtors, Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, New York 11021, Attn: Burton S. Weston, Esq.; (c) counsel to the Creditors' Committee, _____.; (d) counsel for the Buyer, Togut, Segal & Segal, One Penn Plaza, New York, New York 10019, Attn: Frank A. Oswald, Esq.; and (e) counsel for the DIP Lender, Waller Lansden Dortch & Davis, LLP, 511 Union Street, Suite 2700, Nashville, TN 37219, Attn: Katie G. Stenberg and Daniel Flournoy, so as to be **actually received by 4:00 p.m. (prevailing Eastern Time) on June ____, 2013 (the "Objection Deadline").**

8

K.    **Consummation of the Sale**

Except as provided herein and in the Purchase Agreement following the Sale Hearing, if for any reason the Successful Bidder fails to consummate the purchase of the Acquired Assets, then the Backup Bidder will automatically be deemed to have submitted the highest or otherwise best bid. The Debtors and the Backup Bidder are authorized to effect the sale of the Acquired Assets to the Backup Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, its Deposit(s) shall be forfeited to the Debtors and the Debtors specifically reserve the right to seek all available damages from the defaulting bidder.

L.    **Jurisdiction**

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale of the Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Successful Bid, the Backup Bid, and/or any other matter that in any way relates to the foregoing.

## Schedule 2

## Notice of Auction and Sale Hearing

| | |
|---|---|
| **AUCTION DATE AND TIME:** | _____, 2013 at 10:00 a.m. (prevailing Eastern Time) |
| **BID DEADLINE DATE AND TIME:** | _____, 2013 at 4:00 p.m. (prevailing Eastern Time) |
| **SALE HEARING DATE AND TIME:** | _____, 2013 at 10:00 a.m. (prevailing Eastern Time) |
| **OBJECTION DEADLINE DATE AND TIME:** | _____, 2013 at 4:00 p.m. (prevailing Eastern Time) |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re:                                               Chapter 11
SOUND SHORE MEDICAL CENTER        Case No. 13-_____ (___)
OF WESTCHESTER, et al.

             Debtors.
----------------------------------------------------------x

## NOTICE OF AUCTION AND HEARING TO CONSIDER APPROVAL OF THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' REAL PROPERTY AND DESIGNATED PERSONAL PROPERTY ACQUIRED ASSETS

**NOTICE IS HEREBY GIVEN**, as follows:

      1.    On May ____, 2013, Sound Shore Medical Center of Westchester, and

certain of its debtor affiliates[1], filed a motion (the "Motion"[2]) which in pertinent part (the

"Bidding Procedures Motion") sought entry of an order (the "Bidding Procedures Order")

pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy

Code") and Rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"): (a) approving the proposed Bidding Procedures and the schedule to be

used in connection with the proposed sale of the Debtors' Acquired Assets, free and clear of all

liens, claims and encumbrances, security interests and other interests, to Montefiore Medical

Center (collectively, "MMC" or "Buyer"), or to any competing bidder or bidders (the

"Successful Bidder(s)") that submits or collectively submit a higher or better offer or offers for

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number include: Sound Shore Health System, Inc. (1398), Sound Shore Medical Center of Westchester (0117), The Mount Vernon Hospital, Inc. (0115), Howe Avenue Nursing Home d/b/a Helen and Michael Schaffer Extended Care Center (0781), NRHMC Services Corporation (9137), and The M.V.H. Corporation (1514). There are certain additional affiliates of the Debtors who are not debtors and have not sought relief under Chapter 11.
[2] Capitalized terms used herein, unless herein defined, are used with the meanings ascribed to such terms in the Motion.

the Acquired Assets, (b) scheduling an Auction and a Sale Hearing to approve the Sale of the Acquired Assets; (c) approving the form and manner of the notice of the Auction and Sale Hearing; and (d) approving the Break-Up Fee and certain overbid procedures in connection therewith.

2.    A copy of each of the Motion, the Bidding Procedures, and the Bidding Procedures Order may be obtained by: (i) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov (password required), (ii) going in person to the Office of the Clerk of the Bankruptcy Court at the United States Bankruptcy Court, Southern District of New York, 300 Quarropas Street, White Plains, NY 10601-4140, or (iii) contacting Burton S. Weston, Esq. of Garfunkel Wild, P.C., counsel to the Debtors, at 111 Great Neck Road, Great Neck, NY 11021, by telephone at (516) 393-2588 or by email to bweston@garfunkelwild.com.

3.    As set forth in the Bidding Procedures, the sale of the Acquired Assets remains subject to higher or better offers for all or a portion of the Acquired Assets or separate bids and Bankruptcy Court approval.

4.    All interested parties are invited to make competing offers for all or a portion of the Acquired Assets in accordance with the terms of the Bidding Procedures and Bidding Procedures Order. The deadline to submit competing offers (the "Bid Deadline") is _____, 2013 at 4:00 p.m. prevailing Eastern time. Pursuant to the Bidding Procedures Order, if a Qualified Bid is received, the Debtors may conduct an auction (the "Auction") for the sale of the Acquired Assets at Garfunkel Wild, P.C., attorneys for the Debtors, at 111 Great Neck Road, Great Neck, NY 11021, on _____, **2013 at 10:00** a.m. prevailing Eastern time.

5.    The Bidding Procedures Order further provides that a Sale Hearing will be held on _____, **2013 at 10:00 a.m.** (prevailing Eastern time) before the Honorable Robert

2

D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court, 300

Quarropas Street, White Plains, NY 10601-4140 (the "Bankruptcy Court").

6.    At the Sale Hearing, the Debtors will request that the Bankruptcy Court

enter an order, among other things, approving the highest and best bid for the Acquired Assets,

or the Sale Agreement (if no Qualified Bid is received) (which will be determined as described in

the Bidding Procedures), pursuant to which the Debtors will transfer all of the Acquired Assets.

In addition, the Debtors shall request that the Bankruptcy Court provide that the transfer of the

Acquired Assets be (i) free and clear of all liens, claims and interests, including successor

liability claims except as expressly assumed by Buyer; and (ii) exempt from any stamp tax or

similar tax.

7.    At the Sale Hearing, the Bankruptcy Court may enter such orders as it

deems appropriate under applicable law and as required by the circumstances and equities of this

Chapter 11 case. Objections, if any, to the Sale Motion must be made in writing, must state with

particularity the reasons for the objection or response, and must be filed with the Clerk of the

Bankruptcy Court, with copies delivered to the Bankruptcy Court and received by the Chambers

of the Honorable Robert D. Drain, United States Bankruptcy Judge, 300 Quarropas Street, White

Plains, NY 10601-4140, must conform to the Bankruptcy Rules and the Local Rules of the

Bankruptcy Court, must set forth the name of the objecting party, the nature and basis of the

objection and the specific grounds therefore and must be served upon: (a) the Office of the

United States Trustee, 33 Whitehall Street, New York, New York 10004, Attn:

_____; (b) counsel for the Debtors, Garfunkel Wild, P.C., 111 Great Neck Road,

Great Neck, New York 11021, Attn: Burton S. Weston, Esq; (c) counsel to the Committee,

_____;

3

(d) counsel to DIP Lender, _____ ;

(e) counsel for the Buyer, Togut, Segal & Segal, LLP, One Penn Plaza, Suite 335, New York,

New York, Attn: Frank A. Oswald, Esq., so as to be actually received by 4:00 p.m. (prevailing

Eastern Time) on _____, 2013.

        8.     Requests for information concerning the sale of the Acquired Assets

should be directed by written or telephonic request to: Burton S. Weston, Esq. of Garfunkel

Wild, P.C., counsel to the Debtors, at 111 Great Neck Road, Great Neck, NY 11021, by

telephone at (516) 393-2588 or by email at bweston@garfunkelwild.com.

DATED:      Great Neck, New York
                    _____, 2013

                                  GARFUNKEL WILD, P.C.
                                  Counsel for the Debtors

                                  By:_____
                                  Burton S. Weston
                                  A Member of the Firm
                                  111 Great Neck Road, Great Neck, NY 11021
                                  Telephone No.: (516) 393-2200

                                  4